Steve McCANN, Individually, and C.M.C. Trailer Distributors, Inc., Appellants,

v.

Harvey S. BROWN, Appellee.

No. 2–86–055–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 26, 1987.

Clayton Kramer, Wichita Falls, for appellants.

Jenks Garrett, Arlington, for appellee.

Before FENDER, C.J., and HILL, J.

## OPINION

FENDER, Chief Justice.

This case involves a dispute over a contract of sale calling for appellant to deliver a used trailer to appellee for a considera-

tion of two used trailers and $2,500.00 cash from appellee.

Steve McCann was the president of C.M.C. Trailer Distributors, Inc. Greg McCann, brother of Steve, was employed by C.M.C. as a salesman. Although some questions were raised in the trial court concerning the authority of Greg McCann to act for Steve McCann or the corporation and also concerning actions by appellee Brown and/or his son, none of these agency or authority questions have been presented for review, so this opinion will simply refer to appellant and appellee as if they were two individuals.[1]

The judgment is modified as to the award of prejudgment interest, and affirmed as modified.

The contract was evidenced by a purchase order which called for a payment of $16,500.00 as follows:

| | |
|---|---|
| 2 Hobbs Trailers .................... | 14,000.00 |
| State Sales Tax ..................... | 100.00 |
| License and Title ................... | 35.00 |
| Net Price.......................... | 2,635.00 |

Appellee delivered his two trailers at the time specified and agreed to await the imminent arrival of the larger trailer. After several days appellee inquired as to his trailer and was informed that same was late arriving from Houston, Texas, because of hurricane weather. Subsequent inquiry by appellee indicated strongly that rough weather had nothing to do with the nondelivery and that appellant had sold the subject trailer to someone else.

Appellee went to appellant's place of business to demand delivery as contracted and was offered an inferior trailer to replace the missing one. At this point appellant's president, Steve McCann, told appellee (for the first time) that the two trade-in trailers were not worth the price allowed for them and that appellee could take the inferior trailer or the deal was off. When appellee still demanded performance McCann told him to go hire a lawyer. Ap-

1. Although suit was filed against Steve McCann, Individually, no damage award was assessed against him. While Steve McCann, Individually, did file a cost bond on appeal, in the appel- lant's brief his counsel acknowledges that the sole appellant is the corporation. Therefore, all references to "appellant" herein refer to the corporate appellant.

pellee hired an attorney who wrote a letter to appellant demanding performance of the contract and informing appellant that failure therein would result in a lawsuit seeking damages, interest and attorney's fees. Appellee retrieved his two trailers and put them back to work. More than thirty days after the demand letter this lawsuit was filed alleging violation of the Deceptive Trade Practices Act, breach of contract, and common law fraud.

Trial was to the court without a jury. No findings of fact or conclusions of law were requested or filed. Other than the figures appearing on the contract the only testimony as to value was that of appellant when he said that one of the trade-in trailers was only worth $3,000.00 to $3,500.00 while the other was worth $7,000.00. The court found for appellee and fixed his damages as follows:

| | |
|---|---|
| Loss of the bargain: | $2,500.00 |
| Loss of profits: | $1,800.00 |
| Penalty per Sec. 17.50(b)(1): | $2,000.00 |
| Attorneys fees: | $750.00 |
| Prejudgment Interest: | $1,816.78 |

(Prejudgment Interest was figured on $7,050.00 at 10% per annum compounded daily from 8–22–83 through 12–6–85.)

Plus post-judgment interest at the rate of 10% per annum from the date of Judgment until payment.

Appellant has submitted five points of error:

1. The sum of $2,500.00 in no way reflects the loss of benefit of appellee's bargain, under any ground of recovery or theory of law.

2. There is no evidence or alternatively insufficient evidence to support the $2,500.00 award of damages.

3. Damages under the Deceptive Trade Practices Act were improperly awarded because the mandatory notice requirements of section 17.50A, Texas Business and Commerce Code, were not complied with.

4. It was error to award:

(a) prejudgment interest on punitive damages;

(b) prejudgment interest at 10% per annum;

(c) prejudgment interest for the first thirty days;

(d) prejudgment interest compounded daily.

5. The trial court was indiscreet in denying a motion for continuance.

■ The first two points of error present only one question for determination, to wit, what evidentiary support exists for the award of $2,500.00? In answering this we first note that both parties agree that loss of bargain is the proper measure of damages. The measure for the loss of the bargain when the seller breaches is the difference between the market value at the time the buyer learns of the breach and the contract price. *See* TEX.BUS. & COM. CODE ANN. sec. 2.713(a) (Tex. UCC) (Vernon 1968). Further, there is no controversy: that the trailer to be furnished by appellant had a value of $16,500.00; that one of the trailers furnished by appellee was worth the agreed $7,000.00; and that the agreed unpaid balance due from appellee upon delivery of the agreed trailer by appellant amounted to $2,500.00 (plus tax and title). This leaves the difference between the agreed value of $7,000.00 on the remaining trailer and appellant's testimony that same was worth $3,000.00 to $3,500.00 to measure the loss of bargain—somewhere between $3,500.00 and $4,000.00.

■ Since appellee has not prayed for relief under rule 80(b)(2), Texas Rules of Appellate Procedure, we cannot consider modifying the judgment of the court below by increasing the damages ($2,500.00) into the range established by the testimony ($3,500.00 to $4,000.00). However, we note that there is sufficient evidence in the record to support a higher award than that adjudged against appellant. So finding, we further find that appellant cannot complain that he was charged too little and thus obtain a new trial. In *Shell Petroleum Corporation v. Grays*, 131 Tex. 515, 114 S.W.2d 869 (1938) our Supreme Court stated:

An appellant or plaintiff in error may not complain of errors which do not inju-

riously affect him, or which merely affect the rights of others.

*Id.* at 870. The first two points of error are overruled.

■ Appellant's third point of error charges insufficiency of the demand letter when judged by the requirements of section 17.50A, Texas Business and Commerce Code. *See* TEX.BUS. & COM.CODE ANN. sec. 17.50A (Vernon Supp.1987). The notice portion of the letter written by counsel for appellee reads as follows:

> Your actions unquestionably constitute a violation of the Texas Deceptive Trade Practice Act. They also constitute common law fraud. We hereby give notice pursuant to those statutes and failure to deliver the trailer which was purchased will result in us seeking our full legal damages including penalties, interest and attorney's fees.

This court stated in *North American Van Lines v. Bauerle,* 678 S.W.2d 229 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.) (opinion on reh'g):

> The purpose of the notice requirement is to inform the seller of the consumer's complaint and thus provide an opportunity for the parties to settle the matter without litigation.

*Id.* at 235. Our sister court at El Paso expanded on this in *Silva v. Porowski,* 695 S.W.2d 766 (Tex.App.—El Paso 1985, writ ref'd n.r.e.):

> [T]he demand letter is sufficient if it identifies the nature of the consumer's complaint and the various amounts required to make him or her whole.

*Id.* at 767.

Here appellee simply asked for the trailer for which he had bargained. Appellant could have furnished the trailer (as he had promised) and no further action would lie. Appellee clearly cautioned appellant that failure to perform would activate appropriate legal action. We hold that the notice requirement was met. Point of error number three is overruled.

■ In point of error number four appellant complains of the trial court's levy of 10% interest (compounded daily) from the date of the contract to the date of the judgment. Appellant is entitled to some relief under this point.

Appellant argues that the proper rate of prejudgment interest for this case is 6% as provided in article 5069–1.03 of the Revised Civil Statutes. *See* TEX.REV.CIV.STAT. ANN. art. 5069–1.03 (Vernon Pamph.Supp. 1987). This article applies to "all accounts and contracts *ascertaining the sum payable*" when no specific rate of interest is agreed upon by the parties. *Id.* (emphasis added). The statute does not apply, however, unless the contract itself fixes the sum payable or a fixed sum can be readily determined from the contract. *See Perry Roofing Co. v. Olcott,* 722 S.W.2d 538, 544 (Tex.App.—Fort Worth, 1986). This suit, though based on a contract, does not involve a fixed sum ascertainable from the contract itself because it involves the market value of the questioned trailer which can only be ascertained from sources outside the contract. Article 5069–1.03, therefore, does not apply in this case.

■ The question we must then answer is, under what authority did the trial court award prejudgment interest at the rate of 10% compounded daily in a contract action where the contract itself does not establish the measure of damages? Since no findings of fact or conclusions of law were requested or filed in this case, we must uphold the trial court's judgment on any theory of law applicable to the case. *See In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984) (per curiam).

Texas law states that courts have equitable as well as statutory authority to award prejudgment interest in a contract action. *See Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 485 (Tex.1978). Until recently, the proper rate at which equitable prejudgment interest could be assessed was unclear. *See Crown Cent. Pet. v. Nat. U. Fire Ins. C. of P., PA.,* 768 F.2d 632, 637 (5th Cir.1985) (quoting *Dallas-Fort Worth Regional Airport Board v. Combustion Equipment Associates, Inc.,* 623 F.2d 1032 (5th Cir.1980)). The Texas Supreme Court has now provided a guideline for determining the proper

interest rate in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985).

Although *Cavnar* involved an action for personal injury, its reasoning has been interpreted to extend to all types of suits. *See City of Houston v. Wolfe*, 712 S.W.2d 228, 230 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd) (eminent domain); *see also Perry Roofing Co.*, 722 S.W.2d 538 (breach of contract); *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (DTPA suit). *Cavnar* held as a matter of law that:

> [A] prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages *that have accrued by the time of judgment* ... at the prevailing rate that exists on the date judgment is rendered according to the provisions of TEX.REV. CIV.STAT.ANN. art. 5069–1.05, sec. 2 (Vernon Supp.1985).

*Cavnar*, 696 S.W.2d at 554 (original emphasis). Article 5069–1.05 establishes the rate at which post-judgment interest is to be assessed. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.05, sec. 2 (Vernon Pamph.Supp. 1987). The trial judge in this case determined the post-judgment rate of interest on the date of judgment to be 10%. We, therefore, must uphold the award of prejudgment interest at a rate of 10% compounded daily.

■ Appellant further complains that appellee's pleadings are too general to support an award of prejudgment interest. Appellee prayed in his original petition for damages and interest as well as for exemplary damages, court costs, and attorney's fees. A simple prayer for interest provides fair notice of the claim for prejudgment interest. *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80, 96 (Tex. 1976). This contention must be overruled.

■ Finally, appellant complains that awarding prejudgment interest on the DTPA penalty and attorney's fees assessed is error. Prejudgment interest is not recoverable for punitive damages. *Cavnar*, 696 S.W.2d at 555; *Monsanto Company v. Johnson*, 696 S.W.2d 558, 559 (Tex.1985).

We must thus reduce the amount on which prejudgment interest is due by $2,000.00. We find no authority for prejudgment interest on the $750.00 attorney's fees, requiring a further reduction in such amount.

Applying the foregoing to the judgment herein, we find that the prejudgment interest should have been computed at 10% compounded daily on a principal amount of $4,300.00 from August 22, 1983 to December 6, 1985, a period of 836 days, which comes to $1,123.85. We affirm the award of 10% interest from date of judgment to date of payment. Appellant's fourth point of error is sustained in part, and overruled in part.

■ Appellant's fifth point of error concerns an alleged abuse of discretion in the denial of a requested continuance. *See* TEX.R.CIV.P. 251, 252. A review of the record reveals that this point depends entirely upon a statement made by counsel for appellant/defendant (in response to the court's inquiry if defendant was ready to proceed) that defendant announced not ready because certain depositions had just quite recently been delivered to counsel. Some colloquy of counsel follows this announcement. No written motion is filed in the record and no formal oral motion was dictated to the court reporter. No evidence was offered to support any motion for continuance. No exceptions were taken or preserved, either formally or informally. We decline to declare the trial judge indiscreet on the basis of such an exceedingly thin record. Point of error number five is overruled.

Accordingly, the award of the trial court for prejudgment interest in the amount of $1,816.78 is reduced to $1,123.85. Subject to the outlined modification, the judgment of the trial court is affirmed.

BURDOCK, J., concurs in result.