**T. Gwen HOLMES and Joseph S. Ewanowski, Appellants,**

**v.**

**CONCORD HOMES, LTD., Concord Custom Homes, Ltd., Tolmas Enterprises, L.L.C. and Alan T. Tolmas, Appellees.**

No. 06–02–00023–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 8, 2003.

Decided Sept. 4, 2003.

Rehearing Overruled Sept. 30, 2003.

Lindy D. Jones, Jones, Allen & Fuquay, LLP, Dallas, for appellant.

Carl J. Wilkerson, Robert L. Russell Bush, Bush & MOtes, PC, Arlington, Evan Lane (Van) Shaw, Shaw & Lemon, Dallas, for appellee.

Evan Lane (Van) Shaw, for Concord Homes, Ltd.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

T. Gwen Holmes and Joseph S. Ewanowski (hereafter Plaintiffs) sued Concord Homes, Ltd., Concord Custom Homes, Ltd., Tolmas Enterprises, L.L.C., and Alan T. Tolmas (hereafter Defendants), alleging three causes of action: breach of a real estate contract, Deceptive Trade Practices Act violations, and fraud, as well as seeking damages, an accounting, and establishment of a constructive trust. Plaintiffs also sought to pierce the corporate veil and apply alter ego concepts to Tolmas individually. Defendants counterclaimed for breach of a real estate contract and sought a declaratory judgment on an alleged default on that contract.

This lawsuit is based on a contract between Plaintiffs and Concord Homes, Ltd. (hereafter CHL). Plaintiffs agreed to purchase a house from CHL for $400,000.00 after they refurbished the house. Plaintiffs paid $4,000.00 in earnest money when they signed the contract, and the refurbishment was to be completed before closing on the contract. The con-

tract contained a two-week option period. The parties agreed three times to extend closing to allow CHL to fully refurbish the house before closing. Apparently, the refurbishment was considered inadequate by Plaintiffs. They still wanted to purchase the house, however, and filed this lawsuit, according to their brief, to protect their rights to the house.

A jury found in favor of Defendants. In the final judgment, Defendants were awarded damages in the amount of $4,000.00 and attorneys' fees in the amount of $110,000.00. The only portion of this judgment contested by Plaintiffs is the attorneys' fees.

On appeal, Plaintiffs contend the trial court erred by awarding attorneys' fees because (1) fees were not segregated among the four defendants, (2) there was no evidence to support the submission of a jury question on attorneys' fees, and (3) the evidence is legally and factually insufficient to support the jury finding on attorneys' fees. They also contend the trial court erred by allowing late designation of an expert witness and untimely supplementation of attorneys' fees billings and by admitting testimony about mediation and settlement discussions that was of such import as to require reversal of the judgment and remand for a new trial.

**Segregation of Fees**

■ Plaintiffs first contend the fee award is improper because there was no segregation of fees among the different defendants and the different causes of action. The determination of reasonable attorneys' fees is a question for the trier of fact. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 12 (Tex.1991). However, if attorneys' fees are authorized for some, but not all, of a party's claims, that party generally has the duty to segregate recoverable attorneys' fees from unrecoverable attorneys' fees. *Id.* at 11.

■ If, however, no objection is made to the failure to segregate attorneys' fees, either at the time evidence of attorneys' fees is presented or at the time of the charge, the error is waived. *See also* Tex.R. Civ. P. 274; *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 389 (Tex.1997); *Hruska v. First State Bank of Deanville,* 747 S.W.2d 783, 785 (Tex.1988); *Lesikar v. Rappeport,* 33 S.W.3d 282, 317 (Tex.App.-Texarkana 2000, pet. denied).

■ No request for segregation of attorneys' fees was made at the time the evidence was introduced. Plaintiffs contend their objection to the jury question under which fees were awarded was sufficient to support their present claim on segregation. Rule 274 provides: "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." There is only one test for "determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992); *De Leon v. Furr's Supermarkets, Inc.,* 31 S.W.3d 297, 299 (Tex.App.-El Paso 2000, no pet.).

We have reviewed the objection. It raises several issues for the trial court's consideration. However, the objection does not, in any fashion, ask the trial court to either segregate or divide the claims for attorneys' fees among the parties. Under these circumstances, we must conclude this issue has not been preserved for appellate review. *See* Tex.R.App. P. 33.1.

■ Further, even though several defendants were brought into the case, the evidence reflects that CHL was the main defendant and that all claims against Defendants were based on the same assortment of wrongful acts alleged against CHL. Under those circumstances, in the absence of any meaningful effort to raise the issue at trial, we do not agree segregation was required.

### Evidence of Attorneys' Fees

Plaintiffs next raised several related contentions about the evidence of attorneys' fees. They first contend that there was no evidence of attorneys' fees and that the jury question on attorneys' fees should therefore not have been given. The argument is not actually that there is no evidence, but is instead that it is inadequate because it does not segregate fees or show that they were inextricably intertwined.

■ Trial courts must submit questions, instructions, and definitions that the pleadings and evidence raise. Tex.R. Civ. P. 278; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). A trial court may refuse to submit a question only if no evidence exists to warrant its submission. *Elbaor,* 845 S.W.2d at 243. If there is some evidence to support a jury question and the court does not submit it, that failure is reversible error. *Id.* In determining whether a trial court should have submitted a question to the jury, the reviewing court must examine the record for evidence supporting submission and ignore all evidence to the contrary. *Id.*

■ The record contains evidence about attorneys' fees. In the absence of an objection and a request for segregation of fees among the various parties and causes of action, the trial court was never asked to determine whether segregation of fees was necessary. Defendants were there-

fore not required to parse their evidence into separate divisions.

Plaintiffs also contend there is no or insufficient evidence to support the verdict. That argument, however, is also premised on their position that the absence of segregated evidence is equivalent to no evidence. Plaintiffs do not suggest the evidence is insufficient. We find no error in the failure to segregate fees. We overrule that aspect of this point of error.

There is, however, a different aspect of this issue that requires more consideration. Under this point of error, Plaintiffs complain about the sufficiency of the evidence to support the award. Although this aspect was not argued in great detail, we believe we should also address the sufficiency of the evidence to support the dollar amount awarded by the jury.

■ In determining whether there is in the record evidence of probative force to support a jury finding, we must (1) consider all of the evidence in the light most favorable to the party in whose favor the verdict has been rendered and (2) apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). In this review, we disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998).

When considering a factual sufficiency challenge to a jury verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). Courts of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Courts of appeals are not fact-finders. Accordingly, a court of appeals may not pass on the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Ellis*, 971 S.W.2d at 407. If we find the evidence insufficient, we must clearly state why the jury finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). In so doing, we do not pass on the credibility of the witnesses, and we do not substitute our opinion for that of the trier of fact, even if there is conflicting evidence on which a different conclusion could be supported. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

By agreement of counsel, Robert Bush, the designated expert on attorneys' fees, testified in narrative form. He testified about his own firm's fees, fees of Marc Richman, who was retained in the latter stages of the case, including trial, as well as bills from two other attorneys, Michael Schnitzer and Mark Magilow. Bush testified regarding pretrial fees incurred by his firm amounting to $72,364.66; Richman, $8,366.84; Magilow, $4,250.00; and Schnitzer, $7,644.86. Bush testified about his and Richman's hourly rates of $190.00 and $275.00, respectively, and about probable fees for appeals. On that evidence, pretrial attorneys' fees total $92,626.36. Bush also stated that his company's billings included thirty additional hours for the month in which the trial was occurring[1] but not including that day's activities. The trial began on April 30, 2001, recessed for a day, and then continued on May 2, 3, and 4. Bush also invited the jury to include the time it had spent with the attorneys sitting through the days of the trial.

The jury thus had not only the dollar amount of fees for pretrial work, but had been told the hourly rates for the two attorneys and observed them working from voir dire through the end of trial. The record reflects an additional two days of trial work done by Bush, of which the jury was necessarily aware, and reveals that none of the four days of trial activities involving Richman were included in the above figures. Considering the length of the trial days shown by the record, the jury necessarily had before it an additional sixteen hours spent by Bush, and since Richman was working with him, a corresponding number of additional hours spent by Richman. The jury could have considered also the fact that Bush and Richman were working together on the trial and thus that Richman had also spent thirty hours in trial preparation and trial activities before that date—and sixteen hours for the final two days of trial. Bush suggested this to them, in fact.

That amount can be calculated to add at least $3,040.00 in fees payable to Bush and $12,650.00 payable to Richman. This would bring the total to $108,316.36 in fees

---

1. This testimony was taken at the end of proceedings on May 3, 2001. The thirty hours was for the two preceding days' activities. Bush's testimony that his firm had only one hour billable in April 2001 is interesting, in light of the fact that he spent the afternoon of April 30 in voir dire for this case.

payable through trial. It is also apparent from comments made during the taking of testimony that Magilow was also present at trial on behalf of CHL, and he would presumably also bill CHL for his time, although there is no testimony about a particular hourly rate for that counsel. Finally, the owner of CHL testified that the company had paid $83,000.00 to that point in attorneys' fees and owed an additional $10,000.00 in fees, and that he was expecting the trial preparation itself to be an additional $10,000.00 to $20,000.00.

There is evidence of substantial attorneys' fees. Taking Bush's testimony in combination with the time spent at trial by counsel as described above, there is at least a scintilla of evidence from which the jury could have determined the amount of $110,000.00 in attorneys' fees to be appropriate. The remaining question is factual sufficiency. We have set out the relevant testimony and the standards for review above. The evidence before the jury consists of exact dollar amounts under Bush's testimony. The evidence also supports fees in amounts that the jury could readily calculate, based on its observation of the presence of three defense counsel during trial and the available evidence specifying two attorneys' rates, as well as the additional cost incurred by the presence of Magilow during trial. Finally, the jury was also entitled to consider the evidence about the amounts actually paid by Defendants to counsel and outstanding bills.

The evidence of exact dollar amounts does not add up to the precise dollar amount of the jury answer. But, in light of the evidence detailed above, which was before the jury, we cannot say that the jury answer to the question on attorneys' fees was made against the great weight and preponderance of the evidence, or that the evidence cannot fairly be said to sup-port its answer. We overrule this point of error.

**Late Witness Designation and Evidence Disclosure**

Plaintiffs next contend that Richman was untimely designated as an expert witness and that, therefore, his billings should not be considered. They also argue that, since other bills were untimely produced from Defendants' prior attorneys, the fees shown by their bills should also not be allowed. They argue that, because of these discovery failures, all of the evidence about attorneys' fees was improperly admitted over their objections.

Richman did not testify, but we are asked to decide whether evidence about his billings could be placed into evidence through the witness who did testify about attorneys' fees. The initial question is whether this complaint has been preserved for review. In order to preserve a complaint for appellate review, a party must present to the trial court a timely motion stating the specific grounds therefor. TEX.R.APP. P. 33.1. An objection at trial, which is not the same as that urged on appeal, presents nothing for review. *Haryanto v. Saeed*, 860 S.W.2d 913, 921 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Further, premature objections preserve nothing for review. *Correa v. Gen. Motors Corp.*, 948 S.W.2d 515, 518 (Tex.App.-Corpus Christi 1997, no writ); *Tex. Commerce Bank Reagan v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 78 (Tex. App.-Corpus Christi 1993, writ denied); *Mo. Pac. R.R. Co. v. Brown*, 862 S.W.2d 636, 638 (Tex.App.-Tyler 1993, writ denied) (objection required when evidence offered). To preserve the right to complain on appeal about the admission of testimony, Plaintiffs were required to specifically object at the time the testimony was offered, with sufficient clarity to allow the trial court to understand the precise na-

ture of the objection. *United Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc.*, 949 S.W.2d 707, 713 (Tex. App.-San Antonio 1997, writ denied).

We have reviewed the testimony and the objection. The totality of the objection is, "I'm just, for the record, going to make an objection under Rule 193. The billings to support Mr. Bush's testimony were not produced to me. I got the bills on March 1st."[2] By agreement of counsel, Bush then testified in narrative form about his fees and his associates' fees. He also testified about fees for Richman, who was brought in for trial, as well as bills from two other attorneys, Schnitzer and Magilow. Bush then went on to testify about probable fees for appeals.

On appeal, Plaintiffs complain that evidence about Richman's attorneys' fees should have been excluded (whatever the source) and that Bush should not have been able to testify about the billing statements for Schnitzer and Magilow because they were not timely provided as discovery. That objection was not adequately presented to the trial court. The objection made was generic and was not directed at any of the particular complaints now raised on appeal. As stated above, a complaint is not preserved for appellate review if not adequately presented to the trial court for a ruling. Further, the cases cited above also indicate that a *timely* objection must be made, requiring an objection to be made in response to the attempt to introduce evidence, not before it is offered.

Finally, even if preserved, there is authority indicating that a properly disclosed expert may testify about attorneys' fees incurred, based on the billing of other attorneys, even if those bills are not themselves admissible as evidence. *Schlager v. Clements*, 939 S.W.2d 183, 192–93 (Tex. App.-Houston [14th Dist.] 1996, writ denied). That opinion also quoted *Varner v. Howe*, 860 S.W.2d 458, 464 (Tex.App.-El Paso 1993, no writ), agreeing with the El Paso court that, if the trial court had *refused* to allow the expert to testify under those circumstances, it would have abused its discretion by so doing.[3]

We overrule this point of error.

**Settlement Negotiations**

Plaintiffs finally contend the trial court improperly allowed the introduction of repeated statements about settlement negotiations and settlement offers. They complain not about a single question, but about six pages of testimony and discussion at the beginning of which (among other things) T. Gwen Holmes was asked if she or her lawyer had ever contacted Concord Homes to ask if they would be willing to settle the case for $15,000.00 or $20,000.00. She answered that she was sure they had. Plaintiffs' argument on appeal focuses on that initial question.

Plaintiffs contend the subsequent questions improperly brought settlement offers to the attention of the jury. *See LaCoure v. LaCoure*, 820 S.W.2d 228, 235–36 (Tex. App.-El Paso 1991, writ denied). This record, however, contains no objection to that question[4] or to the answer. That answer is thus before the jury for all purposes.

---

**2.** Trial began on April 30.

**3.** The admission and exclusion of evidence is committed to the trial court's sound discretion; thus, we review this issue under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it acts without regard for any guiding

rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

**4.** The record does indicate that a discussion was held at the bench after the preceding question asking whether her lawyer had made

When counsel asked if she could produce correspondence about the offer, counsel then objected on the basis that the matter would invade the confidentiality of a mediation proceeding. Under the standards set out above, this is insufficient to preserve a claim of error as to the specific testimony.

Further, the trial court went on after the mediation objection was broached to inform the jury at some length about the mediation process and the confidentiality involved there, and then instructed counsel to avoid asking questions that invaded the mediation process.

Finally, it is arguable that the objection raised at trial does not comport with the argument raised on appeal. At trial, the focus of the objections was on the issue of whether testimony about mediation discussions was admissible. On appeal, the focus has shifted to the question of whether settlement negotiations in general are admissible in evidence. The Rule 408 argument that Holmes now pursues is not the same argument presented to the trial court.

■ In addition, we recognize there is considerable evidence about mediation and settlement offers that came before the jury without objection. Accordingly, even if the evidence had been properly objected to on this occasion, the admission of the other evidence to the same effect, without objection, renders any error in admitting this testimony harmless. *Adams v. Smith,* 479 S.W.2d 390, 395 (Tex.Civ.App.-Amarillo 1972, no writ); *Brister v. Lasiter,* 444 S.W.2d 331, 338 (Tex.Civ.App.-El Paso 1969, writ ref'd n.r.e.).

We affirm the judgment.

a demand, but the discussion was not recorded.